**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|                          |   |                           |
|--------------------------|---|---------------------------|
|                          | : | Civil No. 3:22-cv-804 (OAW) |
| KENNETH LEBRON,          | : |                           |
|       Plaintiff,         | : |                           |
|                          | : |                           |
|   v.                     | : |                           |
|                          | : |                           |
| THIBODEAU, et al.,       | : |                           |
|       Defendants.        | : |                           |
|                          | : | APRIL 24, 2023            |

<u>**INITIAL REVIEW ORDER**</u>

Self-represented plaintiff Kenneth Lebron ("Plaintiff") currently is incarcerated at Corrigan Correctional Institution ("Corrigan") in Uncasville, Connecticut.  He brings this civil rights action pursuant to 42 U.S.C. § 1983 against Correctional Officers ("C.O.") Thibodeau, Sweatman, Griggs, Muckle, Dumas, and Lieutenant Greene (collectively, "Defendants").  In his Complaint, Plaintiff alleges that Defendants have violated his constitutional rights primarily by beating him or by passively observing his beating.  The court dismisses the Complaint in part but will permit Plaintiff to proceed with some claims against some Defendants.

I.      **STANDARD OF REVIEW**

Pursuant to 28 U.S.C. § 1915A(b), the court must review prisoner civil complaints against governmental actors and "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief."  This standard of review "appl[ies] to all civil complaints brought by prisoners against governmental

officials or entities regardless of whether the prisoner has paid [a] filing fee." *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004) (internal quotation marks and citation omitted).

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although courts have an obligation to interpret "a *pro se* complaint liberally," the complaint must still include sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).


## II.    BACKGROUND

On July 28, 2020, Plaintiff was admitted to Corrigan as a pretrial detainee. Compl. at ¶¶ 13-14, ECF No. 1. Upon admission, he was strip searched by C.O.s Thibodeau and Sweatman. *Id.* ¶¶ 7-8, 16. During the search, C.O. Sweatman discovered a $20 bill on Plaintiff's person. *Id.* ¶¶ 7-8, 16. C.O. Sweatman then "started yelling" and "aggressively" grabbed Plaintiff by the back of his neck with force. *Id.* ¶ 16–17. C.O. Thibodeau also

grabbed Plaintiff by the neck and pinned him against a wall.  *Id* at ¶ 18.  Plaintiff's head hit the wall, causing him to feel dizzy and lightheaded.  *Id.*  C.O. Thibodeau slammed Plaintiff to the floor, causing his head to "split open, and bleed."  *Id.* ¶ 19.  As Plaintiff lied on the floor bleeding, C.O. Thibodeau repeatedly punched his face.  *Id.*  C.O. Sweatman also punched, kneed, and choked Plaintiff while Plaintiff was unclothed and lying on the floor of the intake area.  *Id.* ¶ 20.  According to an incident report compiled after the event, C.O. Griggs was present during the assault, and C.O. Muckle "assisted . . . his fellow employees" in assaulting Plaintiff.  *Id.* ¶¶ 23–24.  Plaintiff alleges that "at no point" was he resisting or being aggressive.  *Id.* ¶ 21.  Plaintiff states that he "hardly understands English" and "barely" speaks the language, yet there was no Spanish speaking interpreter during either his strip search or the assault from the C.O.s  *Id.* ¶¶ 15, 26.

At some point during his beating, Plaintiff lost consciousness.  *Id.*  He awoke in a hospital with bruises all over his body and stitches over his left eye.  *Id.* ¶ 22.  At the hospital, C.O.s Thibodeau, Sweatman, and Griggs accused Plaintiff of ingesting drugs. *Id.* ¶ 23.  However, no drugs ever were found on Plaintiff's person nor detected in his urine.  *Id.*  Since his assault, Plaintiff reports that he has been diagnosed with Bell's palsy (*i.e.*, facial paralysis) and neuropathic pains.  *Id.* ¶  33.  Plaintiff also has panic attacks and severe anxiety because of the assault.  *Id.* ¶¶ 32–34.

Following his hospitalization, Plaintiff was charged with assault of a correctional officer and attempted assault of a correctional officer.  *Id.* ¶ 27.  Plaintiff initially pleaded not guilty to these charges.  *Id.*  In his Complaint, Plaintiff asserts that eventually he was "found guilty" because Defendants "all stuck up for each other[ ] and lied for one another."

*Id.* ¶ 29.  State judicial records indicate that Plaintiff ultimately pleaded guilty to a charge of assaulting a correctional officer and that he was sentenced to four (4) years in jail.[1]

In the Complaint, Plaintiff admits that he did not file an administrative grievance related to his alleged assault until May 16, 2022 – nearly two years after its occurrence. *Id.* at 4, ¶ 37.  However, Plaintiff reports that he was never issued a handbook explaining how to participate in the administrative grievance process upon his admission to Corrigan. *Id.*, ¶¶ 36, 39.  He further reports that he had no knowledge of Department of Correction ("DOC") grievance procedures until they were explained to him on May 5, 2022.  *Id.*

The grievance that Plaintiff filed on May 16, 2022, appears to have been rejected.  *Id.* ¶ 38.  Following this rejection, Plaintiff made no further efforts to exhaust his administrative remedies.  *Id.*

## III.   DISCUSSION

Section 1983 creates a private federal cause of action against any person, acting under color of state law, who deprives an individual of their federally-protected rights. *Rehberg v. Paulk*, 566 U.S. 356, 361 (2012).  Here, Plaintiff brings the following § 1983 claims: (1) a "supervisory liability" claim against Lieutenant Greene; (2) Eighth and Fourteenth Amendment excessive force claims against Officers Thibodeau, Sweatman,

---

[1] The Connecticut Judicial Branch website shows that Plaintiff pleaded guilty to Assault of Public Safety, Emergency Medical, Public Transit or Health Care Personnel on November 16, 2021.  *See State v.  Lebron,* Docket No. K21N-CR20-0162433-S (Conn. Super. Ct. Nov. 16, 2021), available at https://www.jud2.ct.gov/crdockets/CaseDetailDisp.aspx?source=Pending&Key=27a475d2-d233-462e-ba17-ddfa49226a89.  He also appears to be serving sentences for Burglary in the First Degree, Violation of a Protective Order, and Strangulation in the Third Degree (Docket No. WWM -CR20-0184519-T), and a separate Violation of a Protective Order (T19R-CR21-0184735-S), but the case ending in -433 appears to relate to the instant complaint in that the presently-asserted assault allegedly occurred on July 28, 2020 (the offense date listed in -433). *See Sanchez v. RN Debbie*, No. 3:18-CV-1505 (JCH), 2018 WL 5314916, at *2 (D. Conn. Oct. 26, 2018) (noting that the court may "take judicial notice of relevant matters of public record.").

Griggs, and Muckle; (3) Eighth and Fourteenth Amendment deliberate indifference claims against Officers Thibodeau, Sweatman, Griggs, and Muckle; (4) due process claims for failure to "follow protocol" when interacting with "a Spanish speaking person" against all Defendants; (5) Fourteenth Amendment failure-to-protect claims against all Defendants; and (6) Eighth and Fourteenth Amendment retaliation claims against Officers Thibodeau, Sweatman, Griggs, and Muckle.  Doc. 1 at 4-5, ¶¶ 40-44, 46.

In addition to his § 1983 claims, Plaintiff also asks that the court exercise supplemental jurisdiction over the following state law claims: (1) assault and battery claims against all Defendants; (2) negligence claims against all Defendants; (3) "pain and suffering" claims against all Defendants; (4) "mental and emotional, and physical distress and pain" claims against all Defendants; and (5) supervisory liability claims against C.O. Dumas and Lt. Greene.  *Id.* at 4, ¶¶ 44-45.  As remedy for the alleged violations of his rights, Plaintiff seeks $200,000 in compensatory damages, $150,000 in punitive damages, and an injunctive order "placing a separation between [himself] and the defendants."  *Id.* at 5, ¶¶ 48-53.

A.  Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") mandates that prisoners exhaust administrative remedies prior to filing a federal lawsuit regarding prison conditions.  42 U.S.C. § 1997e(a).   Exhaustion is required regardless of whether the available administrative procedures provide the relief that the inmate seeks.  *Cruz v. Sailius*, No. 3:17-CV-1403 (SRU), 2017 WL 5606741, at *3 (D. Conn. Nov. 21, 2017) (citing *Booth v. Churner*, 532 U.S. 731, 741 (2001)).   An inmate must adhere to the procedural rules

pertaining to the state's grievance processes prior to commencing an action in federal court. *Cruz*, 2017 WL 5606741, at *3 (citing *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)).

The Supreme Court has recognized that a prisoner cannot satisfy PLRA's exhaustion requirement by filing an untimely administrative grievance because the statute requires "proper exhaustion" in full compliance with administrative procedures and deadlines.  *See Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."); *see also Snyder v. Whittier*, 428 F. App'x 89, 91 (2d Cir. 2011) ("To properly exhaust a claim, a prisoner must comply with prison grievance procedures.").

"[I]nmates are not required to specially plead or demonstrate exhaustion in their complaints."  *Jones v. Bock*, 549 U.S. 199, 216(2007).  The failure to exhaust administrative remedies is an affirmative defense under the PLRA.  *Id.*  However, a district court may dismiss a complaint from which it is apparent that exhaustion was not satisfied.  *Williams v. Priatno*, 829 F. 3d 118, 122 (2d Cir. 2016).  An exception exists where an inmate is unable to exhaust administrative remedies due to their unavailability.  *See Ross v. Blake*, 578 U.S. 632, 643 (2016).  The Supreme Court has identified three circumstances in which noncompliance with exhaustion may be excused.  *Id.*  First, when a remedy is not available in practice, such as where officers are unable or are consistently unwilling to provide relief to aggrieved inmates.  *Id.*  Second, when an administrative process is "so opaque" that "no ordinary prisoner can discern or navigate it".  *Id.*  And

third, "when prison administrators thwart inmates from taking advantage of a grievance process."  *Id.* at 644.

The DOC's procedure for "Inmate Administrative Remedies"  is set forth in Administrative Directive 9.6.  *See* DOC Administrative Directive 9.6 (effective Apr. 30, 2021), https://portal.ct.gov/DOC/AD/AD-Chapter-9.  The directive provides that an inmate must first attempt to resolve the matter informally.  *Id.* at 9.6(6)(a)(i).  If the inmate cannot resolve the matter through the informal resolution procedure, they may file a Level 1 grievance form.   The grievance form must be filed "within 30 calendar days of the occurrence or discovery of the cause of the [g]rievance."  *Id.* at 9.6(6)(a)(ii)(4).  In his complaint, Plaintiff admits that he did not file an administrative grievance within 30 days of the alleged assault on July 28, 2020.  Compl. at ¶ 37.  Instead, Plaintiff filed his grievance on May 16, 2022.  Although an untimely grievance fails to comply with PLRA's "proper exhaustion" requirement, the instant complaint suggests that Plaintiff's delay should be excused due to unavailability.  Plaintiff alleges that upon admission to Corrigan he was never issued a handbook explaining how to participate in the administrative grievance process. Compl. at ¶ 36.  Plaintiff—whose native language is Spanish—further asserts that DOC's grievance process was first explained to him in May of 2022.  *Id.* ¶ 37.  Administrative Directive 9.6 requires that "[e]ach inmate shall be issued a written summary of Administrative Directive 9.6 . . . during orientation," and that "[a]n inmate whose primary language is Spanish shall receive a copy translated into Spanish." Administrative Directive 9.6(5)(b)(ii).

Courts have recognized that "[a] grievance procedure that is not made known to inmates is not an 'available' administrative remedy."  *Hall v. Sheahan*, No. 2000 C 1649,

2001 WL 111019, at *2 (N.D. Ill. Feb. 2, 2001) (refusing to dismiss claim for failure to exhaust administrative remedies where defendants could not establish that inmate had notice of a grievance procedure); *see also Arnold v. Goetz*, 245 F. Supp. 2d 527, 534 (S.D.N.Y. 2003) (noting that the failure to exhaust may be excused in light of a correctional institution's failure to provide an inmate with sufficient information about the available grievance procedures).     Because Plaintiff has alleged facts suggesting that DOC officials may have deprived him of available administrative remedies by failing to inform him about the grievance procedure, the court will, at this stage of initial review, excuse the exhaustion requirement under PLRA.

      B.  <u>Estoppel</u>

On November 16, 2021, Plaintiff pleaded guilty to assaulting a correctional officer on July 28, 2020.  Compl. at ¶ 29.  This conflicts with the complaint's assertion that Plaintiff never exhibited aggressive or hostile behavior during his interaction with the Defendants. *Id.* ¶ 21.   However, it is not irreconcilable with a finding that the Defendants used excessive force before, after, or during Plaintiff's criminal conduct.  *See Sanabria v. Martins*, 568 F. Supp. 2d 220, 226 (D. Conn. March 26, 2008) (noting that the plaintiff could prove that the defendants used excessive force after the plaintiff had completed the offense for which he entered a guilty plea).   Thus, Plaintiff's case can survive initial screening.  *See Heck v. Humphrey*, 512 U.S. 477, 487 (1994) ("[I]f the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity

of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit."[2]

C. Section 1983 Supervisory Liability Claims

To prevail in a § 1983 suit, a plaintiff must establish not only a violation of their federally-protected rights, but also the "personal involvement" of a named defendant. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). When assessing the sufficiency of a defendant's alleged "personal involvement," the Second Circuit forbids the application of any "special test for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated" the plaintiff's federally protected rights. *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).

Here, Plaintiff does not mention any personal involvement from Lt. Greene or C.O. Dumas in any portions of the factual allegations of the complaint. And, in his prayer for relief, Plaintiff indicates that he seeks to hold these Defendants liable for alleged violations of his constitutional rights simply because they supervised the correctional officers who harmed him. Compl. at ¶¶ 40, 45. Without additional factual details on their involvement in the incident at issue, the court cannot permit the claims against Lt. Greene or C.O. Dumas to proceed. However, the court will permit Plaintiff to amend his complaint to allege facts that could support supervisory liability for either Lt. Greene or C.O. Dumas.

---

[2] Should this case culminate in a trial, Plaintiff may be estopped from arguing a theory of § 1983 liability at odds with the facts established by the guilty plea entered in his criminal case. *See Sanabria* 568 F. Supp. at 226 (noting that while the plaintiff can proceed with a § 1983 excessive force claim arising from the same set of facts that led to the plaintiff's guilty plea, plaintiff cannot proceed on a contention that he did nothing wrong or that the defendant acted without provocation).

Absent an amended complaint that sufficiently states a claim for supervisory liability with respect to Lt. Greene or C.O. Dumas, these defendants will remain dismissed.

    D.  <u>Eighth Amendment Claims</u>

Plaintiff brings claims of excessive force, deliberate indifference, cruel and unusual punishment, and retaliation under both the Eighth and Fourteenth Amendments. Compl. at ¶¶ 41, 46. The Eighth Amendment applies only to sentenced inmates. *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999). "A pretrial detainee's claims are evaluated under the Due Process Clause because, '[p]retrial detainees have not been convicted of a crime and thus 'may not be punished in any manner—neither cruelly and unusually nor otherwise.'" *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (quoting *Iqbal v. Hasty*, 490 F.3d 43, 168 (2d Cir. 2007). Plaintiff appears to have been a pretrial detainee at the time of his altercation with the Defendants. Compl. at ¶¶ 13–14, 31. Accordingly, Plaintiff's Eighth Amendment claims are dismissed. [3] *See* 28 U.S.C. § 1915A(b)(1).

    E.  <u>Excessive Force Claims</u>

Plaintiff brings Fourteenth Amendment excessive force claims against C.O.s Thibodeau, Sweatman, Griggs, and Muckle. Doc. 1 at 4, ¶ 41. To substantiate these claims, Plaintiff must show that such defendants knowingly used objectively unreasonable force against him. *Kingsley v. Hendrickson,* 576 U.S. 389, 396-97 (2015). "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.' *Id.* (citing *Graham v. Connor,* 490 U.S. 386, 396 (1989)).

---

[3] The dismissal of Plaintiff's Eighth Amendment claims is without prejudice. If it is later determined that Plaintiff was a sentenced prisoner at the time of his altercation with the Defendants, then the court may reinstate some or all of the Eighth Amendment claims.

In the complaint, Plaintiff alleges that he was hospitalized after sustaining a severe beating at the hands of C.O.s Thibodeau, Sweatman, and Muckle.  Compl. ¶¶ 17-22, 25.  The assault as alleged by Plaintiff certainly could constitute an objectively unreasonable use of force.  *See Sims v. Artuz*, 230 F.3d 14, 22 (2d Cir. 2000) (allegation of a severe beating satisfied Eighth Amendment excessive force pleading standards).  Thus, the court will permit Plaintiff to proceed with his Fourteenth Amendment excessive force claims against C.O.s Thibodeau, Sweatman, and Muckle.  The complaint does not allege that C.O. Griggs ever applied force upon Plaintiff.  Compl. at ¶ 24.  The singular allegation in the complaint pertaining to C.O. Griggs is limited to watching the assault occur.  *Id*.  While the passive observation of an inmate's beating can expose a correctional officer to § 1983 liability, it cannot serve as a basis for a plaintiff to bring an *excessive force* claim.  Thus, Plaintiff's excessive force claim against C.O. Griggs is dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

F.  Deliberate Indifference and Failure-to-Protect Claims

Plaintiff brings Fourteenth Amendment deliberate indifference and failure-to-protect claims against all Defendants.  Compl. at ¶¶ 41, 43.  A failure-to-protect claim is a specific type of deliberate indifference claim.  *See Farmer v. Brennan*, 511 U.S. 825, 849 (characterizing a particular deliberate indifference cause of action as a "failure-to-protect claim.")  So, although Plaintiff pleads discrete "failure to protect" and "deliberate indifference" claims, effectively, he brings a single cause of action.

A correctional officer may incur § 1983 liability by failing to protect an inmate from violence at the hands of a fellow correctional officer.  *See Blyden v. Mancusi*, 186 F.3d 252, 265 (1999).  When such a failure-to-protect claim is brought by a pretrial detainee,

the plaintiff must show, at a minimum, that a correctional officer recklessly failed to act with reasonable care to protect them from violence, posing an excessive risk to their health or safety. *See Darnell v. Pineiro*, 849 F. 3d 17, 35 (2d Cir. 2017) (defining the elements of a Fourteenth Amendment deliberate indifference claim).

Here, Plaintiff alleges that C.O. Griggs simply "stood there" while C.O.s Thibodeau, Sweatman, and Muckle severely beat him. Compl. at ¶ 24. This allegation supports a finding that C.O. Griggs intentionally or recklessly failed to protect Plaintiff from violence. Thus, the court will permit Plaintiff to proceed with a Fourteenth Amendment failure-to-protect claim against C.O. Griggs.

G. Failure to Follow Protocol Claims

Plaintiff brings Fourteenth Amendment claims against all Defendants for their purported failure to "follow protocol" while interacting with "a Spanish speaking person." Compl. at ¶¶ 42. Plaintiff does not specify how, exactly, Defendants' actions departed from protocol. Regardless, "neither state policies nor 'state statutes ... create federally protected due process entitlements to specific state-mandated procedures.'" *Riddick v. Semple*, 731 Fed. App'x 11, 13 (2d Cir. 2018) (noting that the plaintiff's claim that the defendants violated his due process rights by restricting his access to the prison's grievance procedures confuses a state created procedural entitlement with a constitutional right). Because Plaintiff cannot plead a cognizable due process claim simply by alleging a failure to follow state administrative procedures, his due process claim is dismissed.

H. Retaliation Claims

Plaintiff brings Fourteenth Amendment retaliation claims against C.O.s Thibodeau, Sweatman, Briggs and Muckle.  Compl. at ¶ 46.  Generally, state officials may not retaliate against individuals for engaging in constitutionally-protected conduct.  *Perry v. Sindermann*, 408 U.S. 593, 597 (1972).  To prevail on a constitutional retaliation claim, an inmate-plaintiff must establish "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected conduct and the adverse action."  *Hayes v. Dahlke*, 976 F.3d 259, 272 (2d Cir. 2020) (internal quotation marks and citation omitted).

Plaintiff does not explain in any detail the nature of his retaliation claims.  The complaint never suggests that Defendants beat Plaintiff as retribution for his exercise of any constitutional right.  The only reported motivation for the Defendants' alleged misconduct was that Plaintiff had developed a "bad rapport" with Corrigan staff during previous admissions to the facility.  Compl. at ¶ 14.  Because Plaintiff has not alleged facts supporting an inference that he was beaten as retaliation for exercising his constitutional rights, he has not pled a cognizable retaliation claim.  Plaintiff will be permitted to submit an amended complaint clarifying the basis of his retaliation claim.  Without doing so, the retaliation claim will remain dismissed.

I.  <u>State Law Claims</u>

Plaintiff brings several Connecticut tort law claims against the Defendants.  Compl. at ¶¶ 44–45.  "[F]ederal courts have jurisdiction to hear claims under state law whenever (1) there is a claim arising under the constitution or federal laws; (2) the relationship between the federal claim and the state claim permits the conclusion that the entire action comprises but one constitutional case; (3) the federal claim has substance sufficient to

confer subject matter jurisdiction on the court; and (4) the state and federal claims derive from a common nucleus of operative fact." *Miller v. Lovett*, 879 F. 2d 1066, 1071 (2d Cir. 1989) (*abrogated on other grounds*, *Graham v. Connor*, 490 U.S. 386 (1989)).  Because the court has permitted Plaintiff to proceed with some federal § 1983 claims, it will now consider whether he also may proceed with his state law tort claims.

      1.  <u>Assault and Battery Claims</u>

Plaintiff brings assault and battery claims against all Defendants.  Compl. at ¶ 44. In Connecticut, the tort of assault occurs when: "(a) a person acts intending to cause a harmful or offensive contact with the person of the other ... and (b) the other is thereby put in [ ] imminent apprehension."  *Simms v. Chaisson*, 277 Conn. 319, 331 (2006) (*citing* Restatement (Second), Torts § 21 (1965)).  And battery occurs when: "(a) a person acts intending to cause a harmful or offensive contact with the person of the other or a third person ... and (b) a harmful contact with the person of the other directly or indirectly results."  *Id.* (*citing* Restatement (Second), Torts § 13 (1965)).  In addition to these recited elements, an "actionable assault and battery" against a state officer requires proof that the officer applied "unlawful force."  *Moriarty v. Lippe*, 162 Conn. 371, 389 (1972).

Generally, allegations supporting a constitutional excessive force claim also will support state assault and battery tort claims.  *See Williams v. Paxton*, 3:21-cv-966 (VLB), 2022 WL 17251860 at *7 (D. Conn. Nov. 28, 2022).  Thus, the court permits Plaintiff to proceed with assault and battery claims against C.O.s Thibodeau, Sweatman, and Muckle.

According to the complaint, C.O. Griggs never made or attempted to make harmful contact with Plaintiff.  Compl. at ¶ 23.  Thus, Plaintiff has not alleged facts permitting a

finding that C.O. Griggs *directly* is liable for assault or battery torts.  Connecticut common law recognizes aiding and abetting tort liability.  *See Connecticut Nat. Bank v. Giacomi*, 233 Conn. 304, 329, n.28 (1995).  This requires a showing that an individual substantially assisted or encouraged someone directly liable for a tort.  *See Slicer v. Quigley*, 180 Conn. 252, 259 (1980), *overruled on other grounds*, *Ely v. Murphy*, 207 Conn. 88 (1988)).  In the complaint, Plaintiff does not allege that C.O. Griggs assisted or encouraged his fellow officers during their alleged assault and battery.  Plaintiff simply alleges that C.O. Griggs "stood there" while C.O.s Thibodeau, Sweatman, and Muckle beat him.  Compl. at ¶ 24.  Because mere non-intervention does not permit a finding of aiding and abetting tort liability, the assault and battery claims against C.O. Griggs are dismissed.

2.  Negligence Claims

Plaintiff brings negligence claims against all Defendants.  Compl. at ¶ 44.  However, he clearly alleges an intentional beating.  There is no way to read the complaint as supporting an inference that Plaintiff accidently was injured.  In Connecticut, findings of intentional and negligent conduct are "mutually exclusive."  *DaCruz v. State Farm Fire and Cas. Co.*, 268 Conn. 675, 693 (2004).  Thus, an intentional assault or battery, by definition, is not negligent.  *Id.*  For this reason, all negligence claims are dismissed.

3.  Pain and Suffering Claims

Plaintiff purports to bring "pain and suffering" tort claims against all Defendants.  Compl. at ¶ 44.  However, "pain and suffering" is not recognized as a tort cause of action in Connecticut.  Rather, it is a basis for a judge or jury to award compensatory damages.  *See Maldonado v. Flannery*, 343 Conn. 150, 169-70 (2022).  All "pain and suffering" claims are dismissed, but Plaintiff can seek compensatory damages therefor.

4.  Infliction of Emotional Distress Claims

Plaintiff purports to bring "mental and emotional, and physical distress and pain" claims against all Defendants.  Compl. at ¶ 44.  The court construes this as claims of intentional infliction of emotional distress.

Under Connecticut law, such claims require proof: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe."  *Appleton v. Bd. of Educ. Of the Town of Stonington*, 254 Conn. 205, 210 (2000).  A defendant's conduct is "extreme and outrageous" when it "exceeds all bounds usually tolerated by decent society."  *Id.* (internal quotation marks and citation omitted).

Plaintiff alleges that he was severely beaten by correctional officers and that he suffered severe emotional distress as a result.  Compl. at ¶ 32.  If proven, these claims could satisfy the elements of intentional infliction of emotional distress.  Thus, Plaintiff may proceed with such claims only against the C.O.s alleged to have beaten him: Thibodeau, Sweatman, and Muckle.

5.  Supervisory Liability Claims

Plaintiff seeks to bring claims against Lt. Greene and C.O. Dumas pursuant to "state law of supervisory liability."  Compl. at ¶ 45.  Since Plaintiff attributes no misconduct to Lt. Greene or to C.O. Dumas in the narrative of his complaint, it appears that he seeks to hold them liable for state law torts committed by other defendants on a theory of *respondeat superior*.

Connecticut General Statute § 4-165 provides: "No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment." *Id.* "[W]anton, reckless, or malicious" acts go beyond gross negligence, and denote "highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." *Martin v. Brady*, 261 Conn. 372, 379 (2002).

Plaintiff has alleged no facts permitting an inference that Lt. Greene or C.O. Dumas committed wanton, reckless, or malicious acts in the discharge of their duties or within the scope of their employment. Thus, they are statutorily immune to Plaintiff's state law tort claims. Accordingly, all state law tort claims that Plaintiff intended to bring against Lt. Greene and C.O. Dumas are dismissed.

J.    Injunctive Relief

Plaintiff seeks injunctive relief in the form of an order compelling DOC officials to create a separation profile between himself and the Defendants. Compl. at ¶ 52.[4] Plaintiff only purports to sue Defendants in their individual capacities. Compl. at ¶ 12. But his request for injunctive relief implicitly conveys an intent to bring official capacity claims against at least one of the Defendants. *See Altayeb v. Chapdelaine*, 3:16-cv-67 (CSH) 2016 WL 7331551 at *3 (D. Conn. Dec. 16, 2016) (A plaintiff "cannot seek injunctive relief against [ ] state officials in their individual capacities.")

To state a claim for permanent injunctive relief, a plaintiff must allege facts showing that they will suffer "irreparable harm." *Oginbene v. Parkes*, 671 F.3d 174, 182 (2d Cir.

---

[4] Plaintiff also seeks an order requiring Defendants to "pay for the medical care, for the pain, mental health, defects and other symptoms that stemmed [from his] assault." Compl. at ¶ 50. The Court construes this request as seeking compensatory damages, which Plaintiff is entitled to seek.

2012).  "[I]rreparable harm" is "an injury that is neither remote nor speculative, but actual and imminent."  *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989).  When a federal court orders injunctive relief in the prison context, it must be "narrowly drawn" and extend "no further than necessary to correct the violation of the Federal right."  18 U.S.C. § 3626(a).

Presumably, Plaintiff requests a restraining order because he fears a future incident of excessive force.  However, Plaintiff has not alleged facts permitting an inference that the Defendants' alleged unlawful conduct from 2020 is likely to reoccur.  And, without such allegations, Plaintiff has failed to state a cognizable claim for injunctive relief.  *See Johnson v. Padin*, 2020 WL 4818363 at *6 (D. Conn. Aug. 16, 2020) ("To obtain prospective injunctive relief, whether preliminary or permanent, a plaintiff cannot rely on past injury but must show a likelihood that she will be injured in the future." (internal quotation marks and citation omitted)).  Accordingly, the court dismisses Plaintiff's request for injunctive relief, and by extension, any official capacity claims that Plaintiff may have intended to bring against Defendants.

## IV.   CONCLUSION

The court enters the following orders:

(1) The following claims with respect to C.O.s Thibodeau, Sweatman and Muckle shall **PROCEED:** Fourteenth Amendment excessive force claims; state law assault, battery, and intentional infliction of emotional distress.

(2) The following claims with respect to C.O. Griggs shall **PROCEED:** Fourteenth Amendment deliberate indifference to health and safety.

(3) All claims brought against Lieutenant Greene and C.O. Dumas are **DISMISSED**, subject to Plaintiff's Amended Complaint.

(4) All other claims are **DISMISSED.**

(5) Plaintiff shall be permitted to file an **AMENDED COMPLAINT** within thirty (30) days to clarify the basis for his claims against Lt. Greene and C.O. Dumas and to clarify the basis for his retaliation claim against the C.O.s.  Failure to submit an Amended Complaint within thirty (30) days from this order will result in dismissal of the claims.

(6) The Clerk shall please verify the current work addresses for Defendants with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint and this order to their confirmed addresses within **twenty-one (21) days** of this Order, and shall please report on the status of the waiver requests on the **thirty-fifth (35th) day** after mailing.  If any Defendant fails to return the waiver request, the Clerk shall please make arrangements for in-person individual capacity service by the U.S. Marshals Service on that Defendant, and that Defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(7) The Clerk shall please mail a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs and the Office of the Attorney General.

(8) The Defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.  If Defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above.  The Defendants also may include any and all additional defenses permitted by the Federal Rules.

(9) If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case.  Plaintiff must give notice of a new address even if he is incarcerated.  He should write "PLEASE NOTE MY NEW ADDRESS" on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If Plaintiff has more than one pending case, he should please indicate all of the case numbers in the notification of change of address.  He should also notify Defendants or defense counsel of his new address.

(10) While incarcerated, Plaintiff shall use the Prisoner Electronic Filing Program when filing documents with the court.  He is advised that the Program may be used only to file documents with the court.  Local rules provide that discovery requests are not filed with the court.  D. Conn. L. Civ. R 5(f).  Therefore, discovery requests must be served on Defendants' counsel by regular mail.  Additionally, Plaintiff must serve by regular mail copies of all documents as to any defendant who does not participate in electronic filing.

(11) The Clerk of Court immediately shall please enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures for cases initiated by self-represented inmates, and shall please send a copy to Plaintiff.

**IT IS SO ORDERED** at Hartford, Connecticut, this 24th day of April, 2023.

                          /s/

                       Omar A. Williams
                       United States District Judge